A. B. MURPHY et al., Appellants, v. CHARLES L. BERRY, County Treasurer, et al., Appellees.

**TAXATION:** Refund of Tax—Mandamus as Exclusive Remedy. A tax-
1    payer may not maintain an action for a general money judgment
     against a county, arising out of the fact that he has paid in the
     same year and on the same property an illegal bridge tax levied by
     a city and a legal bridge tax levied by the board of supervisors.
     Whatever remedy he has against the county, if any, must be worked
     out through mandamus to compel a refund.

**APPEAL AND ERROR:** Determination and Disposition of Cause—
2    Modification to Show Abatement Only. A judgment presumptively
     in bar will be modified on appeal to show that it is in abatement
     only, when such is in fact the effect of the judgment. (See Book
     of Anno., Vol. 1, Sec. 12871, Anno. 105.)

Headnote 1:  37 Cyc. p. 1177.  Headnote 2:  4 C. J. p. 1155.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

NOVEMBER 17, 1925.

ACTION at law, tried to the court without a jury, against the county of Johnson and defendant Berry, as its treasurer, to recover a money judgment for the amount of taxes illegally levied against the plaintiff and his assignors, and illegally collected by the county treasurer. The answer was, in effect, a general denial. The case was tried by stipulation under equity

rules, and all evidence offered was received subject to objection, without ruling on such objections. The cause being submitted, the trial court dismissed the petition, and the plaintiff appeals. —*Modified and affirmed.*

*A. J. Shaw* and *W. H. Bailey,* for appellants.

*Edward L. O'Connor* and *Dutcher & McClain,* for appellees.

EVANS, J.—The plaintiff brings his action both as a taxpayer, in his own behalf, and as an assignee of other taxpayers from whom alleged illegal taxes were exacted. The principal question argued on this appeal is whether the plaintiff was entitled to maintain an action at law for a money judgment for the amount of taxes alleged to have been illegally exacted; or whether his sole remedy was pursuant to Section 1417 of the Code of 1897, which requires the board of supervisors to direct the county treasurer to refund taxes illegally exacted. It is the general contention on behalf of the plaintiff that this statute is not binding upon him as a remedy in a case where the levy of the tax by the board of supervisors was void for want of authority.

1. TAXATION: refund of tax: mandamus as exclusive remedy.

The plaintiff and his assignors were resident taxpayers of Iowa City, a city of the second class having more than 5,000 population, and being traversed by a river more than 200 feet wide. Under the statute, such a city is entitled to control and expend its own bridge fund within its own limits. The taxes involved herein include those of 1918 and 1919. For convenience of discussion, we shall refer to the taxes of 1918 only. Whatever conclusion we reach as to these must be reached also as to those of 1919.

The sections of the statute which are involved in the discussion of the case other than Section 1417 are the following: Section 758, Supplemental Supplement, 1915:

"Cities of the first class and also cities of the second class having a population of 5,000 or over, and which are traversed by a stream 200 feet or more in width from shore line to shore line, shall have full control of the bridge fund levied and collected as provided by law, and shall have the right to use the same for the construction of bridges, culverts, and approaches

thereto, repairing the same, and paying bridge bonds and interest thereon issued by such city, and shall be liable for defective construction thereof and failure to maintain the same in safe condition as counties now are with reference to county bridges; and no county shall be liable for any such bridge or injuries caused thereby.''

Section 1303, Supplemental Supplement, 1915, as amended by Chapter 355, Acts of the Thirty-eighth General Assembly:

''The board of supervisors of each county shall, annually, at its September session, levy the following taxes upon the assessed value of the taxable property in the county: * * *

''4.  For making and repairing bridges, not more than five mills on a dollar; but such tax shall not be levied upon any property assessable within the limits of any *city of the first class*, and none of such bridge tax shall be used in the construction or repair of bridges within the limits of such city; provided that in counties having a bonded indebtedness of ten thousand dollars or over, the county board of supervisors may levy not to exceed seven mills.''

Section 888, Code of 1897:

''*Cities of the first class may annually levy* a tax not exceeding three mills on the dollar, to be known as a city bridge fund.''

From a perusal of the foregoing it will be seen that a duty rests upon the board of supervisors to make all bridge fund levies, except that *cities of the first class* may levy their own bridge fund. (This is likewise true of cities under special charter, not material here.)  Section 758 conferred upon Iowa City, as a city of the second class traversed by a stream, power to *control* its own bridge fund.  The power of levying and collecting such bridge fund was left undisturbed in the county authorities, as provided by Section 1303.  What happened in relation to the 1918 taxes was that the city council of Iowa City purported to make a five-mill levy upon the taxable property of Iowa City, for the purpose of a bridge fund.  This was certified to the county auditor in advance of the ordinary September levies.  At the September sitting of the board of supervisors, it adopted the following resolution:

''Be it resolved by the board of supervisors of Johnson

County, Iowa, that the county auditor be and he is hereby authorized to compute the levy so as to produce the amounts above made for the different county funds: Same to be computed upon each dollar of the taxable value of all property both real and personal of the county as equalized by the different boards of review for 1918 made by law subject to such levies and the county auditor is hereby directed to make the tax lists of the several townships, cities and towns in accordance with the levies and certify the same to the county treasurer for collection as by law provided. Levies computed are as follows: * * * Bridge 5 mills

"City Levies.

"And for cities or town funds as by law provided and in no case to exceed the mill levy provided by law. The levies computed are as follows to wit: Iowa City, Iowa, general fund 10 mills, * * * city bridge fund 2.25 mills, city bridge bond and interest fund 2.75 mills."

Pursuant to the foregoing resolution, the auditor entered a five-mill levy against all the taxable property of the county, including that of Iowa City. He also entered the five-mill levy made by the city council and certified to him. The result was that the taxpayers of Iowa City paid a ten-mill levy for a bridge fund, instead of a five-mill levy to which they were legally subject. The five-mill levy ordered by the board of supervisors was collected from all taxpayers, and no part of it was paid over to the authorities of Iowa City for expenditure therein. Nor does it appear that any demand was ever made therefor by the authorities of Iowa City. The attitude of the plaintiff is that the five-mill levy made by the city council was valid, and properly collected, and that the five-mill levy made by the board of supervisors was void, and that its collection was wrong. We do not think that the responsibility for the error necessarily rests upon the board of supervisors. Its resolution was capable at least of a construction entirely consistent with its duties under the law. It was its duty to levy a bridge fund of five mills. It did not purport in terms to levy any greater millage against the taxpayers of Iowa City than against other taxpayers. On the contrary, it recognized five mills as the proper levy for Iowa City. We do not think it material to de-

termine in this case where the blame lay: whether upon the attempted levy by the city council, or upon the resolution of the board of supervisors, or upon the interpretation put upon it by the county auditor. The fact remains that an excess tax for the bridge fund was collected from the taxpayers of Iowa City, to the extent of five mills. For the purpose of this discussion, we may assume also that they were entitled to a refund thereof, pursuant to Section 1417 of the Code of 1897.

Were they entitled to maintain an action for a money judgment against the county as a whole, and against the county treasurer? The question thus presented is fully controlled and negatived by our recent case of *Steele v. Madison County*, 198 Iowa 902. Previous cases on the subject which are relied on and discussed by the appellant are fully considered in the cited case, and we have no occasion to repeat the discussion.

The reason for such a holding is a very substantial one. The statutory remedy would return to the taxpayer the money illegally collected from him, out of the very fund to which he had contributed. In this case the excess collection went into that part of the bridge fund usable by the county at large, exclusive of Iowa City. The refund, therefore, should come from the same quarter. To allow the plaintiff to recover a money judgment against the county as a whole would adjudicate a general liability on the part of the county. The obligation could be met only by levying a tax upon all the taxpayers of the county, including those of Iowa City. All of such Iowa City taxpayers suffered a like wrong with plaintiff and his assignors, and paid the excessive levy. Why should such taxpayers of Iowa City, having already suffered this wrong and now seeking no redress therefrom, be subjected to further liability for the redress of the plaintiff and his assignors?

Moreover, the defendant county treasurer, Charles L. Berry, against whom a money judgment is claimed, was not such county treasurer at the time of the alleged illegal acts, and had no hand in the collection of the taxes sought to be recovered. Why, therefore, should he be subjected to liability as for a money judgment?

In the *Steele* case, supra, the plaintiff sued to recover an excess of taxes collected from him upon his bank stock. His

contention was that no greater levy than five mills should have
been made thereon; whereas in fact a levy of
155 mills was made and collected from him.
We held that he could proceed only pursuant to
Section 1417. We discover no reason for saying
otherwise in the case before us. The effect of
such a holding would be to abate the action of plaintiff without
prejudice to his pursuit of a proper remedy. The judgment of
the trial court did not indicate upon its face that it was a judg-
ment in abatement. It would operate presumptively, therefore,
as a judgment in bar. To this extent the judgment was erro-
neous, and it will be modified accordingly.

*2. APPEAL AND ERROR: determination and disposition of cause: modification to show abatement only.*

The judgment below will be affirmed as a judgment in
abatement, and not otherwise.—*Modified and affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.