**Steven C. JUSTUS, Plaintiff-Appellee,**

v.

**Larry ANDERSON, Gene Foltz, Dick O'Brien, John C. Alverson, Ottis N. Dahle, and Gary Schmidt, Defendants,**

**Duane Marvick, Defendant-Appellant.**

**No. 85–1469.**

Court of Appeals of Iowa.

Nov. 26, 1986.

Edward W. Remsburg, Patricia J. Martin, and Susan E. Hoyman of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for defendant-appellant Marvick.

John R. Ward and Phillip Vonderhaar of Hedberg, Ward, Tan, Owens & Vonderhaar, Des Moines, for plaintiff-appellee.

Heard by OXBERGER, C.J., and SNELL and SACKETT, JJ., but considered en banc.

SNELL, Judge.

On October 14, 1980, the plaintiff, Steven C. Justus, employed by Super Valu Stores, Inc. as a warehouse supervisor, was injured when boxes of paper products fell on him while he was supervising hourly employees in a warehouse in Urbandale, Iowa. Pursuant to Iowa Code section 85.20, Justus filed a petition alleging gross negligence against seven defendant co-employees who allegedly designed and directed the manner and method of storage of products in the warehouse. The case was bifurcated with trial on the liability issue beginning on September 24, 1984.

During the trial on the issue of liability, the court sustained a motion for a directed verdict with respect to five of the seven defendants. As part of its findings and

conclusions entered on November 28, 1984, the court dismissed a sixth defendant. The court then found the remaining defendant, appellant here, Duane Marvick grossly negligent in failing to provide Justus with a reasonably safe place to work. Following trial to the court on the issue of damages, the court, on September 12, 1984, awarded Justus judgment in the amount of $253,582.79, together with interest and costs. This appeal followed.

Marvick first argues that the district court erred in finding him grossly negligent. As this case was tried to the court at law, the district court's findings of fact have the effect of a special verdict. Iowa R.App.P. 4. The court's findings are therefore binding on us if they are supported by substantial evidence. *Brown Township Mutual Insurance Association v. Kress*, 330 N.W.2d 291, 293 (Iowa 1983). A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence even though we would have decided the case differently. *Id.* In evaluating the sufficiency of evidence, we view it in the light most favorable to sustaining the district court's judgment. *Id.* We need only consider evidence favorable to the judgment, whether or not the evidence is contradicted. *Grefe v. Ross*, 231 N.W.2d 863, 865 (Iowa 1975). We are not bound, however, by the trial court's conclusions and applications of the law. *Miller v. Berkoski*, 297 N.W.2d 334, 337–38 (Iowa 1980).

In *Thompson v. Bohlken*, 312 N.W.2d 501 (Iowa 1981), our state's supreme court was first presented with the task of interpreting a 1974 amendment to section 85.20, The Code, which restricted an employee's right to maintain an action against a co-employee under that section. That section states that worker's compensation is the exclusive remedy against a co-employee "provided that such injury ... is not caused by the other employee's *gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.*" (emphasis added to indicate 1974 amendment). The court in *Thompson* interpreted the amendment to

mean that three elements are necessary to establish the degree of gross negligence that allows an employee to maintain a suit against a co-employee under section 85.20. Those elements are (1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril. *Id.* at 505. These elements were recently reaffirmed as our guide in section 85.20 cases such as the present one. *Taylor v. Peck*, 382 N.W.2d 123 (Iowa 1986).

In the present case, we think that there is insufficient evidence in the record to support the trial court's findings that the defendant should have foreseen that his conduct would probably result in injury to a warehouse employee.

The facts of this case, when viewed in the light most favorable to the district court's judgment, establish the following. Defendant Marvick was in charge of the "resetting," or redesign, of the warehouse in which Justus was injured. A part of this redesign called for the storage of paper products in floor stacks four pallets high. This redesign occurred between October 1979 and April 1980. During the period of the reset, Marvick spent a good deal of time at the Des Moines warehouse and became familiar with warehouse operations. He knew that warehouse workers were oftentimes in the aisles between the stacks of paper products and that many of these workers were unprotected from falling objects. Marvick had observed stacks leaning and tilting, knew that a four-high stack of paper products was more likely to tilt than a three-high stack, and that if a stack leans far enough without something supporting it the stack will fall. He knew that a person could be seriously hurt by being hit by a 40–pound box falling 20 feet through the air and that it was possible that people working around the stacks would be injured. Whatever degree of negligence this evidence may be said to demonstrate, we are of the opinion that it falls short of a showing of gross negligence as that term is used in Iowa Code

section 85.20. In particular, the record contains insufficient evidence to support the district court's findings that Marvick had, or should have had, knowledge that in this situation injury was probable, as opposed to possible.

Justus maintains that this case is more like *Larson v. Massey-Ferguson, Inc.*, 328 N.W.2d 343 (Iowa Ct.App.1982), in which this court held the elements required by *Thompson* were satisfied, than it is like *Taylor v. Peck*, 382 N.W.2d 123 (Iowa 1986), and *Thompson*, where the Iowa Supreme Court held the elements were not met. We disagree. In *Larson*, plaintiff's immediate supervisor had instructed his crew to "put [their] weight" on an *operating* post-hole digger, and plaintiff became entangled in the unshielded, rotating shaft of the auger. This court held the evidence sufficient to show that although the defendant knew of the danger associated with the unshielded shaft and that injury was a probable result of his order, he nevertheless consciously disregarded the peril by ordering the crew to put their weight on the auger. *Id.* at 346. That the defendant in *Larson* knew the injury was probable whenever working near unshielded moving parts was evident in that he had previously warned the crew to stay clear of the moving portions of the post-hole digger. *Id.*

In the present case, however, we find nothing in the record to support a similar finding that Marvick knew, or should have known, that injury was a probable result of his redesign of the warehouse. Marvick did know, and conceded at trial, that injury was a *possibility* as a result of the stacking of the paper products. This, however, is insufficient to enable a plaintiff to proceed under section 85.20. In order to show a cause of action under that section, a plaintiff must show defendant's actual or constructive knowledge that injury was *probable*. This Justus has failed to do.

In this respect, this case is akin to *Thompson* and *Taylor*. In both of those cases, the court noted as significant on the issue of defendant's knowledge that no oth-

er accidents had occurred under similar circumstances, *Thompson*, 312 N.W.2d at 505; *Taylor*, 382 N.W.2d at 128, and that defendant had not been placed on notice by safety inspections that injury was probable. *Thompson*, 312 N.W.2d at 505; *Taylor*, 382 N.W.2d at 128. Similarly, the present record is devoid of any instances of previous similar injuries or other warnings of injury. Justus argues that a similar injury occurred to an employee, Monsma, when a four-high stack of paper products fell on him. The record discloses, however, that the incident in which Monsma was involved occurred as a result of Monsma striking the stack which ultimately fell while attempting to move a neighboring stack with a forklift. Consequently, we do not agree that this earlier accident, even if known to Marvick, would constitute evidence that he knew the present injury was probable, as opposed to possible, when the stacks were not jolted by large machinery and Justus was simply proceeding down an aisle. Like those in *Thompson* and *Taylor*, the present record fails to disclose evidence of any inspections or studies critical of the method of storage involved here.

The district court, in finding Marvick liable under section 85.20, concluded that "[t]he nature of the falling product, the size and the weight and the distance falling, make the injury probable." We believe that this statement seriously oversimplifies the inquiry involved in section 85.20 cases. Both *Thompson* and *Taylor* involved injury inflicted by large industrial presses, obviously dangerous instrumentalities given the proper set of circumstances. Our inquiry, however, does not end there. Given the instrumentality's nature, we must determine whether the evidence discloses a set of circumstances sufficient to support a conclusion that the defendant knew, or should have known, that injury was the *probable* result of those circumstances. A proper set of circumstances was shown in *Larson*; it was not shown in *Thompson* or *Taylor* and, we think, it has not been shown in the present case.

As we hold the evidence to be insufficient to find gross negligence within section 85.20 on the part of Marvick, we do not reach the damages issue.

REVERSED.

All Judges concur except OXBERGER, C.J., and SCHLEGEL, J., who dissent.

SCHLEGEL, Judge (dissenting).

The majority concludes that the evidence is insufficient to find gross negligence within section 85.20 on the part of Marvick, even though the trial court found sufficient evidence that the defendant should have foreseen that his conduct would probably result in injury to the plaintiff.

I must dissent to this conclusion for two reasons. First, I believe the record does show that the trial court was correct in finding sufficient evidence to support the finding that there was gross negligence on the part of the defendant. The majority and the trial court agree that the crux of this case is whether the injury was a *probable* as opposed to a *possible* result of the danger. The record amply illustrates that the court was fully aware of the correct standard to apply. The court cites section 85.20 as the statutory basis for this action. The court cites *Thompson v. Bahlken*, 312 N.W.2d 501 (Iowa 1981) as the first case interpreting the amended section 85.20. The court cites Uniform Jury Instruction No. 31.1 and 31.2 which define gross negligence of a co-employee and explain the essentials for recovery against the employee. The court examines the similarity of *Larson v. Massey-Ferguson, Inc.*, 328 N.W.2d 343 (Iowa Ct.App.1982) to *Thompson*, and the court specifically states it is relying on the holdings in these two section 85.20 cases. After listening to all the evidence, after weighing the credibility of the witnesses, after applying the proper standards, the court found that the "defendant should have foreseen that his conduct would probably result in injury to some employee at some time." In disagreeing with the court's findings, the majority says that the injury caused to the employee Monsma was not sufficiently akin to the defendant's injury in this case since Monsma was attempting to move a stack of paper products with a forklift whereas the defendant was not so engaged. The majority also believes that the trial court oversimplified its inquiry when the trial court concluded that the "nature of the falling product, the size and the weight and the distance falling, make the injury probable." In fact, the trial court's analysis was not as simple as the majority depicts. The trial court looked to the previous and, in its judgment, *similar* injury to Monsma; the trial court considered the reset design of the paper products; it considered the failure to use more expensive but safer stacking methods and equipment; it considered the knowledge of Marvick as an engineer; it considered the prior observations of Marvick in the warehouse as to locations of employees; and, it considered Marvick's admission of the *possibility* of injury. The court said it was looking at all of these factors when it reached its conclusion that the defendant should have foreseen that defendant's conduct would probably result in injury to an employee. I do not believe that we should here substitute our weighing of the facts for the complex analysis of the same facts by the trial court.

The second reason I must dissent is that the majority opinion, perhaps unwittingly, unjustifiably narrows the factors which must be analyzed to find that an injury was a probable result of a co-worker's negligence. In looking to *Thompson* and *Taylor v. Peck*, 382 N.W.2d 123 (Iowa 1986), the majority over-emphasizes two criteria set out in those cases for finding gross negligence: that no other accidents had occurred under similar circumstances, and that the defendant had not been placed on notice by safety inspections that injury was probable. In comparing *Thompson* and *Taylor* to this case, the majority finds that since no similar injury occurred (after its finding of fact that the Monsma injury was really not like the defendant's) and since there were no inspections or studies critical of the method of storage in this case, there was insufficient evidence to find gross neg-

ligence within section 85.20. I must emphasize that our cases do not *reduce* our analysis to a search for these two factors. For instance, in *Thompson*, though the court did look to the elements of prior injuries under similar circumstances and lack of safety inspections which would have put the employee on notice, the court also looked to the *observation* and *experience* of the defendant as factors to be considered. *Thompson v. Bohlken*, 312 N.W.2d at 505. In *Thompson*, the court found that the defendant was not aware by observation or experience that the injury was probable. In the instant case, the court in examining the evidence before it found that the defendant should have been aware by his observation and experience that his conduct would probably result in injury. In *Larson*, the court emphasized the "obvious peril" of the situation in finding gross negligence. *Larson v. Massey-Ferguson, Inc.*, 328 N.W.2d at 346. In the instant case, the court found that the injury was "waiting to happen," that there was no doubt that the material would fall. In *Taylor*, the supreme court emphasized that it would not find gross negligence when it was shown that the co-worker did not know that injury was probable as opposed to possible when a "machine *was stopped or not operating*" [emphasis in original]. *Taylor v. Peck*, 382 N.W.2d at 128. Therefore the court made a determination of what precise facts were within the ken of the defendant given the circumstances that prevailed at the time of the accident. *Id.* at 127–28. In the instant case, the trial court looked to the particular circumstances which existed at the time of the accident and found that at the time of the accident, the knowledge of the defendant was such that he should have known his conduct could probably result in injury. The time the injury could occur in this case was diachronic, a condition over a period of time, as opposed to the synchronic on and off peculiarity of a machine's functioning as in *Taylor*.

I would therefore not restrict our analysis of co-worker gross negligence cases to a search for similar prior injuries or prior safety inspections. I would also look to factors such as the observations and experience of the defendant, the obvious peril of the situation, and the particularized facts and circumstances of the case. The district court looked to all of these factors and found gross negligence. The majority looks only to two factors and concludes that plaintiff's injury was only the possible and not the probable result of the defendant's conduct. In looking at the entire complex of factors, I see no reason to disturb the trial court's finding of gross negligence since there is substantial evidence in the record to sustain its judgment.

OXBERGER, C.J., joins this dissent.